IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE CO., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 17 C 5937 |
| PREMIER PAIN SPECIALISTS, LLC, by its legal name and under its assumed name PREMIER PAIN & SPINE LLC; OMAR SAID, MD; and MARY ANN ELAM | ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ohio Security Insurance Company (OSIC) seeks a declaratory judgment that it has no duty to defend or indemnify Premier Pain Specialists, LLC (PPS) or Dr. Omar Said in a negligence action brought by Mary Ann Elam, who alleges she was injured after a procedure at a PPS facility. Both sides have moved for judgment on the pleadings.

### Background

In a motion for judgment on the pleadings, the Court must "tak[e] all facts pleaded in the complaint as true and construe all inferences in the [nonmoving party's] favor" while "review[ing] the complaint and all exhibits attached to the complaint." *Forrest v. Universal Sav. Bank, FA*, 507 F.3d 540, 542 (7th Cir. 2007).

**I.      Parties**

OSIC is an insurance company organized under the laws of New Hampshire with

its principal place of business in Massachusetts. PPS operates as Premier Pain & Spine LLC; all of its members are Illinois citizens. Omar Said is an Illinois citizen and physician who works at a PPS location. (From here on, the Court refers to the defendants generally as PPS, unless otherwise indicated.)[1] Mary Ann Elam, also an Illinois citizen, sued PPS in the Circuit Court of Cook County for negligence to recover for injuries she sustained after falling at the PPS facility at which Said worked.

## II. Insurance policy

PPS holds a business owner's insurance policy from OSIC. The insurance policy provides that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"." D.E. 21, Pl.'s Ex. 4 at 34 (Business Owners Coverage Policy). (For exhibits of the insurance policy, the Court refers to the ECF pagination, as the page numbers of the exhibits are not internally consistent.) "Bodily injury" is defined as "[b]odily injury, sickness, disease, or incidental medical malpractice injury sustained by a person[.]:" D.E. 21, Pl.'s Ex. 5 at 40 (Business Owners Liability Extension Endorsement). The policy defines "incidental medical malpractice injury" as "bodily injury arising out of the rendering of or failure to render, during the policy period, the following services: (a) medical, surgical, dental, x-ray, or nursing service or treatment . . . or (b) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances." *Id.* at 38. The policy states, however, that incidental medical malpractice coverage does not apply to "any insured engaged in the business or occupation of providing any of the services described under a. and b. above[.]" *Id.*

---

[1] The parties' arguments as to whether OSIC has a duty to defend PPS and Said are ultimately identical, so the Court analyzes the defendants together.

Also relevant to the parties' claims is the professional services exclusion, which excludes from coverage any injury "caused by the rendering or failure to render any professional service." *Id.*, Pl.'s Ex. 4 at 41. The definition of professional services includes "[m]edical, surgical, dental, X-ray or nursing services treatment, advice or instruction" and "[a]ny health or therapeutic service treatment, advice or instruction[.]" *Id.*

### III. Underlying claim

PPS argues that OSIC has a duty to defend and indemnify it in a negligence suit. The Court draws facts about the suit from the complaint filed in that suit and a video of the incident, both of which OSIC attached to its complaint as exhibits. Elam, the plaintiff in the underlying lawsuit, alleges that, on January 20, 2015, she underwent a procedure to mitigate neck pain through epidural injections, for which she also received anesthesia. The video begins by depicting Elam walking alongside an attendant through the PPS recovery room. A second staff member is seated at a desk; she is not attending to Elam. The first attendant turns his back to Elam, who reaches up to her neck and then stumbles to the left. She falls through a curtain, which obscures a chair. Elam collides with the chair as she falls. *Id.*, Pl.'s Ex. 2 (Security Camera Video Clip). Elam claims to have broken her femur and several ribs in the fall.

In her lawsuit against PPS, Elam asserted two counts of medical negligence and one count of general negligence, the latter of which PPS argues falls within its OSIC policy. Elam alleges PPS was generally negligent when it:

    A. Failed to properly assess and evaluate [Elam] before placing her in the recovery room;

    B. Failed to properly monitor [Elam] while in the recovery room;

C. Failed to properly restrain and secure [Elam] while in the recovery room to ensure that she did not fall;

D. Failed to assign proper and adequate personnel to monitor and assist [Elam] while in the recovery room;

E. Failed to ensure that [Elam] was properly attended to at all times while at [Premier Pain's] facility in order to prevent a fall;

F. Failed to have, utilize and enforce proper fall risk criteria;

G. Failed to have, utilize and enforce appropriate measures to prevent [Elam] from falling in Defendants' recovery room;

H. Failed to have proper and safe beds, chairs and other equipment to ensure the safety of [Elam] while in Defendants' recovery room;

I. Failed to properly educate, train, and supervise its employees in the proper care and treatment of patients who have undergone epidural pain injections under anesthesia;

J. Failed to properly staff and assign personnel to provide appropriate care and treatment to post surgical patients to ensure [Elam's] safety while in Defendants' recovery room.

K. Failed to have, utilize and enforce appropriate post surgical care procedures to ensure the safety of [Elam] while in Defendants' recovery room;

L. Failed to equip its recovery room beds, chairs, furniture, and other equipment to properly restrain post surgical patients and to prevent them from falling;

M. Failed to have, provide and design a proper and safe recovery room to ensure the safety of post cervical patients;

N. Failed to maintain its premises and facility, including its recovery room in a safe condition so as to prevent patients from falling while in the recovery room;

O. Failed to have a clear and unencumbered path for the movement and transport of patients in and about its recovery room;

P. Placed post surgical patients in a recovery room without ensuring that the area was clear and safe for the movement and transport of surgical

4

      patients;

  Q. Maintained its recovery room in a crowded and congested condition when Defendants knew or should have known that such condition was unsafe for the movement and transport of post surgical patients;

  R. Equipped its recovery room with beds, chairs, stools and other equipment that were unsafe and inappropriate for use by post surgical patients;

  S. Were otherwise negligent.

D.E. 21, Pl.'s Ex 1 ¶ 15. Elam filed her lawsuit against PPS in December 2016, and OSIC filed the present declaratory judgment suit in this Court in August 2017.

## Discussion

After the parties file a complaint and answer, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Guise v. BMW Mortg., LLC*, 337 F.3d 795, 798 (7th Cir. 2004). The Court takes all facts alleged in the complaint as true, construing all inferences in favor of the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

OSIC seeks declaratory judgment that it has no duty to defend or indemnify PPS in connection with Elam's suit.[2] To determine whether a duty to defend exists, "the burden is on the insured to prove that its claim falls within the coverage of an insurance policy. Once the insured has demonstrated coverage, the burden then shifts to the

---

[2] The duty to indemnify arises only if there is a duty to defend; a party that has no duty to defend "necessarily" lacks a duty to indemnify. *AU Elecs., Inc. v. Harleysville Grp., Inc.*, 82 F. Supp. 3d 805, 815 (N.D. Ill. 2015).

5

insurer to prove a limitation or exclusion applies." *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453-54, 905 N.E.2d 747, 752 (2009). "If the insurer relies on an exclusionary provision, it must be 'clear and free from doubt that the policy's exclusion prevents coverage.'" *Wesco Ins. Co. v. Wood*, No. 15 C 7190, 2017 WL 4283952, at *5 (N.D. Ill. Sept. 27, 2017) (quoting *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992)).

To determine whether Elam's claim qualifies for coverage under the policy, the Court applies an "eight corners" analysis, in which "the court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage." *Pekin Ins. Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195 ¶ 36. "The factual allegations of the [underlying] complaint, rather than the legal theory under which the action is brought, determine whether there is a duty to defend." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 815 (7th Cir. 2010) (quoting *Pekin Ins. Co. v. Dial*, 355 Ill. App. 3d 516, 823 N.E.2d 986, 990 (2005)).

The first step is to determine whether Elam's negligence claim is covered by the OSIC policy. *Fay*, 232 Ill. 2d at 453-54, 905 N.E.2d at 752. The insurance policy covers "bodily injury," which includes (in relevant part) "bodily injury" and "incidental medical malpractice injury." D.E. 21, Pl.'s Ex. 5 at 40. An "incidental medical malpractice injury" is "bodily injury arising out of the rendering of or failure to render . . . medical, surgical, dental, x-ray or nursing service or treatment[.]" *Id.* at 2. OSIC contends that Elam's complaint falls squarely within the definition of an incidental medical malpractice injury—and it also contends that medical service providers like PPS

6

are excluded from coverage arising from this definition. *See id.* (excluding coverage for "any insured engaged in the business or occupation of providing" "medical, surgical, dental, x-ray or nursing service or treatment"). But the definition of "bodily injury" is not limited to "incidental medical malpractice injury" alone. An insured can also assert that the underlying complaint raises a garden-variety "bodily injury" claim, as PPS does here. "[A]ny doubts and ambiguities are resolved against the insurer." *Microplastics*, 622 F.3d at 811. The Court assumes without deciding that PPS has shown that Elam's claim falls within the policy coverage.

The second step is to determine whether Elam's complaint falls within the professional service exclusion of the OSIC policy. *Fay*, 232 Ill. 2d at 453-54, 905 N.E.2d at 752. *See* D.E. 21, Pl.'s Ex. 4 at 41 ("This insurance does not apply to . . . "bodily injury" . . . caused by the rendering or failure to render any *professional service*. This includes but is not limited to . . . (4) [m]edical, surgical, dental, X-ray or nursing services treatment, advice or instruction; (5) [a]ny health or therapeutic service treatment, advice or instruction[.]") (emphasis added).

Illinois courts construing professional services exclusions give such clauses an "expansive definition." *State St. Bank & Tr. Co. v. INA Ins. Co.*, 207 Ill. App. 3d 961, 967, 567 N.E.2d 42, 47 (1991). The term "professional service" "refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature." *Id.* at 967, 567 N.E.2d at 47. For this reason, the Court is unpersuaded by PPS's attempt to define "professional service" in accordance with the definition supplied by the Professional Service Corporation Act. 805 ILCS 10/3.5. Though the Professional

Service Corporation Act defines "professional service" as a service requiring the party rendering the service to hold a license, *id.*, Illinois courts expressly reject such a definition in the context of insurance law, noting "the term [professional service] is not limited to services performed by persons who must be licensed . . . in order to practice their professions." *State St.*, 207 Ill. App. 3d at 967, 567 N.E.2d at 47.[3]

PPS contends that much of Elam's complaint raises issues that do not rest on the provision of professional medical services, so the exclusion cannot apply. Specifically, PPS contends that the professional services exclusion clause does not apply to allegations that it "failed to keep the recovery room in a safe condition so as to prevent a fall," maintained "faulty equipment in the room," or used a "faulty design" for the recovery room. Mem. in Supp. of PPS Mot. for J. on the Pld'gs at 8-9.

In response, OSIC argues that Elam's allegations, taken as a whole, plainly fall within the professional services exclusion. It argues the Court should look to the complaint "as a whole" to "assess its true nature." *Am. Fam. Mut. Ins. Co. v. Roth*, 381 Ill. App. 3d 760, 768, 886 N.E.2d 1149, 1156 (2008). OSIC argues that Elam's allegations of PPS's negligence, taken as a whole, reflect a failure to render *medical services*, such as assessing Elam's risk of a fall, monitoring her closely for signs of a risk, and restraining her in the event of a fall. OSIC further argues that PPS's attempt to isolate certain allegations—the condition of the recovery room, the beds and chairs placed in it, and the overall design of the room—is inconsistent with the general way in which the complaint should be read.

To the extent that Elam's complaint alleges a failure to render medical services, it

---

[3] PPS argues that *State Street* is inapposite, but it fails to explain why. *See* Defs.' Combined Reply in Supp. of J. on the Pld'gs at 13-14.

is plainly within the professional services exception. But the Court must "liberally construe[]" the underlying complaint in favor of the insured. *Id.* at 764, 886 N.E.2d at 1153. Even if, however, the Court focuses on the allegations that PPS emphasizes, Elam's complaint describes conduct within the professional services exclusion. "[A]ny business activity" involving "specialized knowledge" that is primarily "mental or intellectual" is a professional service under Illinois law. *State St.*, 207 Ill. App. 3d at 967, 567 N.E.2d at 47. And PPS's attempt (or failure to attempt) to create a reasonably safe recovery room is shot through with decision-making that relies on "specialized knowledge." *Id.* Consider the questions raised by Elam's recovery care. After a patient receives anesthesia while undergoing an epidural, how long must the patient rest before being permitted to walk? Would a chair be an appropriate place for the patient to recover, or should the patient recover on a bed? One would need specialized medical knowledge to answer these questions.

This holding is consistent with other cases interpreting the scope of a professional service exclusion clause. Illinois courts routinely interpret such clauses to include conduct involving an insured's specialized knowledge, even if the conduct is not in the domain in which that knowledge is typically applied.[4] Thus, one Illinois court found that a lawsuit brought against a hospital for discontinuing an experimental treatment program fell within a professional service exclusion. *Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 2014 IL App (1st) 113755 ¶ 86. The hospital

---

[4] PPS offers *United States Fidelity and Guaranty Co. v. VOA Associates*, No. 08 C 862, 2009 WL 2763973 (N.D. Ill. Aug. 27, 2009), but this case does not interpret the scope of a professional services exclusion, but only whether a reasonable factfinder could conclude the insurer provided the insured notice it was reserving its rights under the exclusion.

9

argued the decision to end the program was an administrative decision outside the professional service exclusion, but the court found that the decision to shut down the program required the hospital to "act[] upon its specialized medical knowledge," by considering "safety concerns and a lack of demonstrable efficiency of the treatment." *Id.*

Likewise, a court found that a suit in which a plaintiff alleged the defendant, an outpatient eye surgery provider, negligently hired an incompetent surgeon fell within a professional service exception. *Nat. Fire. Ins. Co. v. Kilfoy*, 375 Ill. App. 3d 530, 536, 874 N.E.2d 196, 202 (2007). The court held that the employer's capacity to "assess [the candidate surgeon's] qualifications to advise and screen farsighted patients and determine their candidacy for LASIK surgery" required the employer to "render professional services" that involved "specialized knowledge and skill." *Id.* The court also noted that the fact that the underlying complaint described these functions as "administrative supervision" and "business operation[s]" did not change the fact that each involved "specialized knowledge." *Id.* at 531, 874 N.E.2d at 197.

This holding is also consistent with relevant cases outside of this jurisdiction. In a decision applying a professional service exclusion with a narrower scope,[5] a court found that a medical service provider's decision to operate a facility with an elevator too small to transport a stretcher fell within the exclusion. *Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L.*, 771 F. Supp. 2d 1328, 1335 (S.D. Fla. 2011). As the court noted,

---

[5] The relevant professional services exclusion excluded injuries "arising out of the rendering or failure to render any professional service, including but not limited to . . . medical, surgical . . . service, treatment, advice, or instruction[.]" *Fla. Atl. Orthopedics*, 771 F. Supp. 2d at 1330. The court did not apply a judicial gloss analogous to the *State Street* standard.

10

"[a]n intricate part of the provision of medical services is the possible transportation of a critically ill patient to the hospital, including the decisions made regarding that transportation." *Id.* The court concluded that the decision to use a facility with a small elevator was a "medical decision" that affected transportation decisions, so the professional service exclusion applied. *See also Colony Ins. Co. v. Suncoast Med. Clinic, LLC*, 726 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010) (holding that the implementation of policies to facilitate communication about diagnostic tests fell within a professional service exclusion).

The cases that PPS cites do not require a different conclusion. Indeed, several of PPS's cases *support* the Court's conclusion. First, PPS cites to a case in which a professional service exclusion was not applied to a claim against a hospital that was sued after a patient jumped out of the window of a mental health facility and killed herself. *Guaranty Nat. Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 135 (5th Cir. 1990). The Fifth Circuit noted that the hospital's liability was founded on "its negligent failure to maintain [the patient's] window in such a manner as to prevent her from committing suicide through the window." *Id.* at 135-36. But the court distinguished between two types of errors: a decision made "as a matter of professional judgment not to protect the open unit patients from the perils posed by the windows" and a "decision to protect the open unit patients through screws in the window sashes rather than through fixed, protective screens over the windows[.]" *Id.* at 136. The court concluded that the hospital's decision as to *how* to install the screens was the latter type of error, so it did not involve an "exercise of a trained . . . judgment" based on "medical policy." *Id.* at 137. One judge wrote in dissent that even the decision of how to affix the window

11

screens to the building was a medical decision that fell within the professional services exception. "[O]nly a medical professional is equipped to assess the degree and character of restraint needed for the safety of a given psychotic patient . . . such a decision involves a professional judgment[.]" *Id.* at 138.

Second, PPS cites to a case in which a professional service exclusion did not apply to a claim in which the plaintiff alleged she suffered a fall out of a hospital bed after the hospital failed to put the bed's guardrails in position. *D'Antoni v. Sara Mayo Hosp.*, 144 So.2d 643, 646-47 (1962). The court held that the exclusion did not apply but, as in *North River*, distinguished between two situations: "While the initial decision to attach the side rails to the bed may have involved professional judgment, once the attending physical issued the order the professional aspect of it was complete. The placing and maintaining the rails in position was purely mechanical." *Id.* at 647.

The Court's decision is consistent with *North River* and *D'Antoni*, as both of those cases involved a failure to implement an already-determined medical service or procedure. But here, Elam has not alleged that PPS designed a recovery procedure that was negligently implemented. Rather, she alleged PPS "failed to *have*, utilize, and enforce appropriate post surgical care procedures[.]" D.E. 21, Pl.'s Ex. 1 ¶ 15 (emphasis added). There is no allegation of the sort of "administrative" or "purely mechanical" negligence that existed in the *North River* or *D'Antoni* cases: Elam has not alleged that she was injured by a negligent act akin to a poorly-installed window screen or a guardrail not affixed in the proper position. Rather, Elam repeatedly alleges that PPS committed an error of judgment, that is, it failed to reasonably apply its specialized medical knowledge to design, create, and run a recovery room. This is akin to the initial

decision whether to install a safety screen or to provide guardrails, not the subsequent installation of such equipment. The Court concludes that the reasoning of these cases supports its holding.

The Court does not find PPS's remaining cases compelling. Several analyze very particular facts not applicable here. *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 96 N.C. App. 635, 641, 386 S.E.2d 762, 766 (1990) (finding that an individual's failure to lock the wheels of a chair or hold it in place is not a professional service); *Marx v. Hartford Accident & Indem. Co.*, 183 Neb. 12, 14, 157 N.W.2d 870, 872 (1968) (finding that the process of boiling water in order to sterilize tools is not a professional service).

PPS also cites *Vance v. Okaloosa-Walton Urology, PA*, 228 So. 3d 1199 (2017), a case in which the court distinguished between ordinary and medical negligence. But the standard distinguishing medical negligence from ordinary negligence is different from the standard distinguishing professional services from other services; this case is inapposite to the question at hand.

Finally, PPS cites *American Family Mutual Insurance Co. v. Enright*, 334 Ill. App. 3d 1026, 781 N.E.2d 394 (2002), a case in which the court held a professional services exclusion did not apply to a negligent hiring claim against an ultrasound technician and his employer. *Id.* at 1035-36, 781 N.E.2d at 402. In the underlying claim, the plaintiff alleged that the technician sexually assaulted her during an ultrasound procedure and that the employer negligently hired the technician, as it did not inquire into the technician's prior criminal history. *Id.* But *Enright* merely shows that medical skill and knowledge is not required to inquire into a candidate's criminal history. *Id.* By contrast, specialized knowledge *is* required to understand how to create a recovery room safe for

13

patients and to provide care, treatment, and supervision to those patients in the room.

The Court concludes that Elam alleges a claim arising from an injury caused by PPS's failure to render a professional service. For this reason, Elam's claim falls within the professional service exclusion. Thus OSIC has no duty to defend or indemnify PPS in the underlying suit. Because the Court finds in OSIC's favor, it denies PPS's claim for attorney fees under 215 ILCS 5/155 (an insured is only entitled to attorney's fees if the insurer's argument against finding a duty to defend was "vexatious and unreasonable").

## Conclusion

For the foregoing reasons, the Court denies PPS's motion for judgment on the pleadings [dkt. no. 35] and grants OSIC's motion for judgment on the pleadings [dkt. no. 40]. The Clerk is directed to enter judgment in favor of plaintiff and against defendant, finding that plaintiff Ohio Security Insurance Company has no duty to defend or indemnify defendants Premier Pain Specialists, LLC (d/b/a Premier Pain & Spine LLC) or Omar Said in connection with the case entitled Mary Ann Elam v. Premier Pain Specialists, LLC et al., No. 2016-L-012505 (Circuit Court of Cook County).

```
                                          _____
                                                MATTHEW F. KENNELLY
                                                United States District Judge
```

Date: July 19, 2018